Good morning, Mr. Picard. Good morning. May I proceed? Please. Thank you, Your Honors, and may it please the Court. Josh Picard, on behalf of Defendant Appellant James Cohen. The United States Sentencing Guidelines are clear about what information courts can consider during sentencing. Strict adherence to those parameters is necessary to further the Sentencing Commission and Congress's goals of uniformity and foreseeability in sentencing. In selecting a Chapter 2 offense guideline, courts may only consider the charging documents. This Court should vacate Mr. Cohen's sentence and remand for resentencing under the Guideline for Fraud and Deceit because the information did not show that Mr. Cohen's false statement related to sex offenses, and the information did not provide sufficient facts to support application of the eight-year enhancement, both of which are required for application of the Obstruction of Justice Offense Guideline. Turning to my first argument, failure to register under Section 2250 is not a sex offense. The Sex Offender Registry Notification Act is explicit that failure to register is not a sex offense, and multiple other provisions of the Guidelines that were passed concurrently with 2J1.2 and after the fact are all clear that failure to register is not a sex offense. It may not be there, but Appendix A specifically provides that the statutory max applies to sex offenses under 109B, and if you look at 109B, it talks about failure to register. It's the only provision there. Wouldn't your argument just do away with 109B? No, Your Honor. How do you make sense of that? Sure. 109B only has one statute, 2250, but it has multiple criminal prohibitions within that  So A and B speak to failure to register, and then Subsection D speaks to a crime of violence for someone who failed to register. And so it's possible that Subsection D might be a sex offense that a false statement could relate to, but failure to register under A and B are not sex offenses. That could trigger the enhancement. Do we even need to go to Appendix A if we look at the statute itself? Yes, Your Honor. That's kind of where my question is, because the statute says if the matter, meaning the matter within the jurisdiction of here, the executive, if the matter relates to an offense under Chapter 109B, then you get eight years. You can get up to eight years. Yeah. So it's an enhanced maximum, not mandatory minimum. You are so right. Up to eight years. It's not eight years. Right. So if the matter relates to an offense under dot, dot, dot, 109B, not more than eight years. So there, the statute takes us right to 109B, which is failure to register. Right. So the appendix language does not track the language of the enhancement. 1001A says an offense, but in Appendix A, it says sex offenses. The clear difference between the two phrases requires that there be a sex offense under those cited chapters. And in response to Judge St. Eve's question, I was proffering that potentially under 2250D, not A or B, there could be a sex offense for a false statement to relate to. But under A and B, there's no sex offense. And therefore, even if the eight-year maximum might apply, you don't go to 2J1.2. You stay within fraud and deceit under 2B1.1. For that reason, because there is no sex offense to relate to, Mr. Cohen's false statement does not relate to a sex offense. And the district court erred in selecting 2J1.2. Right. You started out by talking about definitions in other places. Why would those matter when Appendix A and 2J1.2 supply their own definition? Why do we need to go outside of there? I would disagree that 2J1.2 provides a definition. The phrase sex offenses is not defined in 2J1.2 or in Appendix A. And so, in trying to figure out what that means, because of the discrepancy between the language in 2J1.2 and in 1001A, I looked for other federal definitions of sex offenses, including the definition under SORNA, which was passed in the same 2006 bill as 1001A. And SORNA's definition does not include failure to register under 2250A or B. I also looked at sentencing guidelines provisions. And in every single provision, sex offenses does not cover failure to register. In fact, the commission actually amended 5D1.2 in response to a circuit split, because some courts were holding that failure to register was a sex offense. And the commission explicitly changed 5D1.2 to make clear that it is not a sex offense. And so, that's where the different definitions come from to interpret 2J1.2. Let me take you back to 2J1.2. And apologies if you think you've covered this already. But why, tell me why this reading is wrong. If it says, because the matter relates to sex offenses under 18 U.S.C. 1591, or because the matter relates to chapters 101, 109A, 109B. If the matter modifies both, relates to sex offenses under 1591, and then separately, the matter relates to chapter 109B, that avoids the word sex offense. And it just says the matter relates to 109B, and then here, the matter relates to 109B. Tell me why that would be an incorrect reading of the language in 2J1.2. I don't think that's the most natural reading. Usually, when there's a modifier at the beginning of a list of clauses, the modifier would apply to each of them. But even if you were to interpret it that way, there's another reason, which is that there's no see enter included in the information. And in order for the enhancement to apply, the information has to have an acknowledgement and factual basis to show that the defendant had knowledge of the matter under investigation. And the information simply doesn't say anything about Mr. Cohen knowing the matter under investigation. And at the stage of guideline selection, you're only allowed to look at the information. The Supreme Court has repeatedly said that for sentencing enhancements, a see enter requirement must apply, even if it's not explicit in the statute, and in the few decisions that have interpreted the enhancement. Why? I don't understand your see enter argument. Looking at the information here, it charges him with knowingly and willfully making a material false statement in a matter relating to an offense under Chapter 109B. So it charges him with knowingly and willfully making a material false, fictitious, or fraudulent statement of representation. So there's see enter as to the false statement, which would simply be the traditional offense under 1001, which carries a five-year maximum. My point is that you must also know the matter under investigation in order for the enhanced maximum to apply. The information does not say that Mr. Cohen knew the matter under investigation, and so it can only support the five-year maximum. And if only the five-year maximum is supported by the information, then you can't go to 2J1.2. Why doesn't his plea agreement waive that particular argument where it's about the sufficiency of the information? Because 1B1.2 doesn't permit consideration of the plea agreement unless there's an explicit stipulation that permits that. There is no such stipulation, and the government never argued there was a stipulation. So at this early stage of guideline analysis, you simply can't look at the plea. I'd like to reserve the rest of my time for a vote. Thank you. Mr. Hayes? May it please the court. This morning, Brian Hayes on behalf of the United States. The district court did not err in using 2J2.1 to compute the defendant's offense level here. Appendix A, as the court has observed this morning, says that 2J2.1 applies if the eight-year maximum applies because the matter relates to sex offenses under enumerated provisions, which include Chapter 109B. The defendant acknowledged in the district court's plea agreement that all those things were met, that the eight-year statutory maximum applied, that 2J1.2 applied, that he knew that the matter related to a violation under Chapter 109B, and that the offense, not just that 2J2.1 applied, but that a four-level upward adjustment applied because the matter related to a sex offense under Chapter 109B. But how persuasive is that argument when the plea agreement specifically says that defendants can correct errors in sentencing guidelines or interpretation of them prior to sentencing? Judge, you're right, that the plea agreements do permit the parties to address errors in interpretation, application, in order to avoid these sorts of mistakes in validating plea agreements. That's the primary purpose of Paragraph 10 of the plea agreements. But I think this court has said in U.S. v. Martinez, I think that was 122.521 Fed Third, we cited it in our brief, that there was a point where that concept could be stretched too far. And the government was, frankly, taken to task a little bit for not staking out a stronger position as to why isn't the government holding the defendant to his admissions here. Fortunately, this is not a case, I think, where, if you'll excuse me, coin in a phrase, the panel's going to have to struggle with where does the Martinez line, if you will, get drawn, because I think under any standard here, whether it's de novo review, whether it's plain error, whether it was waived, the district court did not err, because based upon the facts that were presented and the admissions made, this guideline was properly applied. Appendix A states it applies to matters that relate to Chapter 109B, and that's really all the court needed to find. And I think the defendant's arguments are unconvincing in that regard. Mr. Hayes, what do you make of the addition of the word sex and sex offenses in the guidelines? Because the statute doesn't have it, right? That's right. And as far as I can tell, looking at all the various statutes that come after it, they all seem to involve the same types of offenses. I mean, putting 102B to the side, they're all very explicitly sex offenses, whether it's child sex offenses or trafficking or what have you. In a way, it just seems like that term is a bit redundant or unnecessary, but then again, we are to try to give as much meaning to all the words as possible when interpreting text. And so I'm wondering, why do you think that's there? If you look at historically what was in Appendix A as to 1001, what it said before was that it applied when the matters relate to international and domestic terrorism, whereas the statute refers to some specific provisions as to those offenses. In the guideline, it did not at that time. And so when they drop in this part about 1001 after the enactment of the Adam Walsh Act, I think rather than going from international and domestic terrorism and offenses under da-da-da, it sort of made sense to drop sex offenses in there just as sort of a preparatory descriptor of, okay, we're changing subjects now and here's what we're talking about. So I think that adequately explains it. And I think that's particularly persuasive when you look at the legislative history and the commission commentary relating to Amendment 701 where they explain what they were doing here. So that's one reason why I think the defense's arguments against the district court's application are not convincing because it would effectively render 109B a nullity in Appendix A. And then I think even if you do accept the defense's position that we need to sort of take sex offenses out separately from its context and sort of give it some substantive meaning, the result is still the same because the application note says it applies if the matter relates to sex offenses. And as this court knows, relates to has one of the most broadest meanings you can imagine when you're conducting statutory interpretation. And in this sense, a sex offender who's lying about the registration address of another sex offender, a registration requirement that stems from a sex offense, this does relate to sex offenses in that sort of natural understanding of the term even, and also in the broad way it's understood in federal law, even criminal law. So the government believes that the district court's use of 2J1.2 was correct. And unless there are further questions, I will... Mr. Cohen's argument about the scienta requirement and the information in the statute, specifically the idea that the government had to... allege in the information that he knew the matter being investigated. Judge, I think that in the beginning of the allegations, when it said the defendant did these things, knowingly and willfully, that carries into that second... that new, I guess I would call it an additional factor, given that the eight-year statutory max is going to apply. It's sort of the enhanced offense. But I still think you can read that knowingly and willfully at the beginning to cover both premises. I think certainly, standing here now, perhaps we would do that different and make sure that was more clear. But certainly in the plea agreement and I think in the information, which provided a lot of context for the case, that seemed implicit to me. Seems implicit? I'm sorry. Okay. If there are no further questions, then, I will conclude. Thank you. Thank you. Mr. Picard. Your Honors, in response to your question about the best way to interpret whether 1591 could be set off from the rest, I would point Your Honors to the exact language where there's no comma between sex offenses and then under 18 U.S.C., 1591 or chapters. They're all part of the same phrase. So grammatically, it wouldn't make sense to have sex offenses only apply to one part without a comma splice between them. Additionally, Pelley said that knowingly and willfully part of the offender was implicit in the plea agreement. I'd like to point Your Honors to a Ninth Circuit decision called Green that speaks to the requirements of a factual basis in an information. The citation is... I can provide that in... Oh, here it is. 137, Federal Report of 4th, 1056, says that has to unambiguously include the factual basis, and there's no unambiguous inclusion of that in the information. And finally, to end, the fact that the plea agreement did not have this information is fatal because the court cannot consider the plea agreement, just the information. Thank you, Your Honors. Thank you. Thanks to both counsel. The court will take the case under advisement.